These orders for keeping ferries, made by the county court, are like grants of the king for the same purpose in the English law; and the liberty granted by them, like those in the king's grant, are forfeitable for abuser
or nonuser; but there is no evidence set up of improper behavior in the ferryman, of nonuser or abuser. The act of 1784, ch. 14, secs. 1 and 15, has ordered bonds to be given by the ferryman, in a large penalty, for the faithful and punctual discharge of his duty; he is thereby liable for in attention in any special instances. By the same act 5 penalty is inflicted for detaining any persons for want of hands, boats, or attendance. With respect to ferries, the common law was that no ferry should be erected so near another bound by law to be provided with crafts, attendance, etc., as to draw away its profits. 3 Bl. Com., 219; 2 Roll. Ab., 140. It goes upon this principle, that such prohibition is for the public good, as the best way of encouraging expensive undertakings for the service of the public is to secure to the undertaker the profits accruing. The principle of our act of Assembly is the same. 1787, ch. 16, sec, 1, inflicts a penalty on those who transport passengers across at public ferries, not being duly authorized. So does the act of 1787, ch. 3, sec. 4. They deem it unreasonable to suffer another to interfere with the profits of a ferry already established, at a considerable expense, perhaps, to the owner, as such interference is discouraging to undertakings of that sort, and of course disadvantageous to the public. This being the principle of our law, I am not for allowing another ferry to be established at or near the same place. It might divide the profits so as to render the ferry of no value to either.